Westlaw.

1996 WL 1186939                                                                                                                          Page 1
**(Cite as: 1996 WL 1186939 (Mass.Super.))**

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.

Tracy **TINKHAM** et al.,
v.
JENNY CRAIG, INC. et al.

No. 940511C.

April 19, 1996.

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GERSHENGORN.

*1 Plaintiffs brought this action alleging claims of breach of contract and various torts stemming from the termination of or resignation from their employment relationship with the defendants. [FN1] Plaintiffs claim that agents of the defendants made certain oral promises to them before and during their employment and that these promises constituted assurances of promotion. Defendants counter that plaintiffs were at all times at-will employees who could be terminated at any time, and thus plaintiffs' reliance on any oral promises of promotion was unreasonable.

> FN1. At the time of filing this motion, three of the plaintiffs, Tracy Tinkham, Paul Langley, and Stephen Tahan, have also filed independent actions for sex discrimination under G.L. c. 151B.

Defendants now move for summary judgment under Mass.R.Civ.P. 56 on all remaining counts of plaintiffs' complaint. [FN2]

> FN2. Plaintiffs' original complaint also set forth claims of negligent infliction of emotional distress (Count II) and breach of implied covenant of good faith and fair dealing in violation of public policy (Count IX). Defendants removed plaintiffs' various cases to federal district court, and that court remanded the cases to the Superior Court. However, while in federal court, defendants moved to dismiss plaintiffs' complaint and United States District Court Judge Patti B. Saris dismissed Counts II and IX by order dated August 17, 1994.

Furthermore, the parties stipulated during oral argument on this motion that plaintiffs will withdraw any claims under Count X of their complaint for breach of implied covenant of good faith and fair dealing by employer over-reaching for its own economic advantage.

BACKGROUND [FN3]

> FN3. In ruling on a motion for summary judgment, the evidence should be considered in a light most favorable to the opposing party. *Beal v. Board of Selectmen of Hingham,* 419 Mass. 535, 539, 646 N.E.2d 131 (1995). Therefore, for the purposes of this motion, this Court will assume, *arguendo,* that the alleged statements of Jenny Craig employees as testified to by plaintiffs, are true.
>
> Furthermore, this Court has incorporated in this section its ruling on defendants' motion to strike by excluding from this section those relevant portions of plaintiffs' affidavits which were in direct conflict with their prior deposition testimony, were conclusory or not based on personal knowledge. See *Madsen v. Erwin,* 395 Mass. 715, 721, 481 N.E.2d 1160 (1985); *O'Brien v. Analog Devices, Inc.,* 34 Mass.App.Ct. 905, 906, 606 N.E.2d 937 (1993). Also, defendants' objection to Ms. Byrd's affidavit has been cured by the submission of the deposition transcript of Donna Curio. Defendants' request for attorneys' fees and costs on the motion to strike is denied.

A. Jenny Craig's Corporate Operations

Defendants Jenny Craig, Inc. and Jenny Craig Weight Loss Centers, Inc. (Jenny Craig) operate weight loss centers across the United States,

1996 WL 1186939                                                                                                          Page 2
**(Cite as: 1996 WL 1186939 (Mass.Super.))**

including centers located in Massachusetts. The plaintiffs were all employees hired by Jenny Craig to work in the North Boston region. These Centers were generally staffed with a Center Director, [FN4] one or more Program Directors, several Weight Loss Counselors, and other support personnel.

>       FN4. It appears from the record, that the previous title for Center Directors was Center Managers.

Center Directors managed the Center and directed the activities of lower-level employees. Sales Trainers trained the region's Program Directors and a Weight Loss Counselor Trainer trained the region's Weight Loss Counselors. The primary job responsibility of a Program Director was the sale of weight loss programs to potential Jenny Craig customers. Weight Loss Counselors were responsible for counseling existing Jenny Craig clients on a weekly basis as part of the company's weight management program.

B. Plaintiffs' Employment Histories

Stephen Tahan

On or about October 20, 1992, Stephen Tahan (Tahan) interviewed for employment with Ginny Sheldon (Sheldon), Center Director for the Lawrence Center of Jenny Craig. During the interview, Sheldon made certain statements related to Tahan's opportunity for promotion within Jenny Craig. Sheldon stated that as long as Tahan was doing a good job, she could see him moving up in the company towards a managerial position. Sheldon never stated specifically when Tahan would be promoted. Tahan understood that his eligibility for promotion depended on his performance on the job.

Tahan began working as a weight loss counselor at Jenny Craig's Lawrence Center on or about December 1, 1992. During his employment at Jenny Craig, a few Jenny Craig employees told Tahan that based on his personality and fitness background, he would be a good program director and should be recommended for a promotion. Tahan was told during his initial interview and during training sessions that even if he did not want to be promoted, he could remain in the position of weight loss counselor as long as he continued to perform well. Tahan assumed that Sheldon had the power to promote him.

The employment application filled out by Tahan on or about October 20, 1992, contained a provision which stated that Tahan's employment with Jenny Craig was for no definite period and that he could be terminated at any time without prior notice. On or about December 21, 1992, Tahan executed a confidentiality agreement which contained the following provision in paragraph eleven:

> *2 You as employee are hired for an unspecified duration, and your employment is not guaranteed for any specific length of time. Therefore, either you as employee, or the Company may terminate the employment relationship at will, at any time with or without cause or notice. No other provision of this document, nor any oral or written statements made to you at anytime, nor will any other fact or circumstance affect the at will status of your employment with the company.

The confidentiality agreement also stated that its terms and conditions were an important and essential part of the employee's (here, Tahan's) employment with Jenny Craig.

On or about July 1, 1993, Jenny Craig terminated Tahan due to a lack of productivity and lack of business at the Lawrence Center.

Paul Langley

Paul Langley (Langley) interviewed for a position with Jenny Craig on or about April 1992. He was interviewed by Regional Supervisor, Cheryl Grindelin (Grindelin) and Joseph Egan (Egan), a center director. During the interview, Grindelin promised Langley that he would be promoted to assistant director within one year. Langley understood, however, that his promotion to management would depend on his performance in accordance with the guidelines for particular positions along the way. He also understood that his promotion could be affected by his performance relative to other fellow employee candidates. Langley thought that Grindelin had the authority to hire employees and make promises regarding promotions. Egan did not tell Langley that he would be promoted to a particular job at a certain time and made no other promises of promotion. In a third interview with Regional Director Susan Becker, Langley was told that he would be a center director or assistant center director within one year provided he met the guidelines of the other positions he held along the way. Langley told his interviewers that he was giving up a lucrative position in order to accept the position with Jenny Craig. On or about April 14, 1992, Langley was hired as a weight loss counselor. On the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

date of his hire, Langley executed a confidentiality agreement which contained an at-will provision with the same language as the one in Tahan's agreement, as cited above.

During his employment at Jenny Craig, other employees told Langley that there was unlimited growth potential and that assuming his work performance was good, he could work himself up to a center director position. On or about July 1992, Langley was promoted to program director. Citing stress, working conditions, and a lack of promotional opportunities, Langley eventually submitted a letter of resignation effective January 21, 1993.

Robert Short

On or about August 1989, Robert Short (Short) interviewed for employment with Laura Foglia (Foglia), Regional Supervisor for Jenny Craig. During the interview, Foglia promised Short a weight loss counselor position and advancement to a managerial position within six months to a year. Short believed that his advancement would be contingent on how he performed on the job relative to other candidates. Short was told that Foglia had the authority to make hiring decisions in the region. Short was hired as a weight loss counselor on or about August 21, 1989. Short also signed a confidentiality agreement which contained the exact language pertaining to at-will employee status as noted above in the Tahan agreement.

**\*3** During his employment, Short was also told by his Center Director, Donna Corio (Corio), that he was management material. Corio did not promise Short a particular management position by a particular time. Short applied for a promotion three times, but was unsuccessful. A manager implied to Short that he was not being promoted because he was male. Since he was not being promoted and due to other concerns about changes in his work environment, Short voluntarily resigned effective November 1, 1990.

Tracy Tinkham

On or about November 5, 1989, Tracy Tinkham (Tinkham) interviewed with Corio, Foglia, and Susan Allen (Allen). At the time, Corio and Allen were area or regional supervisors and Foglia was a regional director. During the interview, Tinkham was told that there was room for advancement in Jenny Craig with unlimited income potential. Corio also promised Tinkham that if he fulfilled the job requirements, he would be promoted to a center director position within a six to nine month time frame. Allen also told Tinkham that he would be promoted to center director within six months to a year. Tinkham understood that his promotion depended on his performance on the job in entry-level positions and his performance relative to other candidates. Tinkham was offered a position at the end of the interview. The promises of promotion formed part of the reason why he accepted the position. On or about November 22, 1989, Tinkham signed a confidentiality agreement which contained the exact language pertaining to at-will employee status as noted above in the Tahan agreement.

During his employment at Jenny Craig, other supervisors encouraged Tinkham that he had promotion potential and that he would receive a management position in the company. These supervisors did not discuss with Tinkham a specific place or time of any prospective promotions. Despite several attempts in applying for promotion, Tinkham was never promoted. Tinkham was temporarily made an assistant center director, but was later reinstated to his former positions of program director and weight loss counselor. At another point, Tinkham was appointed as a weight loss retention specialist.

On or about February 1, 1993, Jenny Craig terminated Tinkham due to irreconcilable differences with his supervisor and placing his name on two scheduling tools.

Richard Garland

Sometime in March 1990, Richard Garland (Garland) interviewed with Corio for employment at Jenny Craig. Corio was the Area Supervisor. Although not stating a particular time, Corio told Garland that based on his educational and employment background, he would be promoted quickly to a center director position. After speaking to Corio, Garland believed that he had a contract for employment and that he would be promoted to center director or trainer within one year. Garland understood that his promotion was not guaranteed, but was contingent on his performance relative to other employees. Garland believed that Corio had the authority to make promises regarding promotions. On or about March 20, 1990, Garland executed a confidentiality agreement containing the exact at-will employee provision as noted above in Tahan's agreement.

**\*4** Throughout his employment at Jenny Craig, Corio continued to make certain statements to Garland which suggested that she was considering him for a center director position. Sometime around

1996 WL 1186939 Page 4
(Cite as: 1996 WL 1186939 (Mass.Super.))

October 1990, Garland was appointed as a program director. Garland was never promoted to center director or trainer. He believes that he was not promoted because he was male. Because Garland felt that he would not be promoted due to his sex, he voluntarily tendered his resignation effective January 1, 1991.

DISCUSSION

Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Cassesso v. Commissioner of Correction,* 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); *Community National Bank v. Dawes,* 369 Mass. 550, 553, 340 N.E.2d 877 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. *Pederson v. Time, Inc.,* 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner v. Technical Communications Corp.,* 410 Mass. 805, 809, 575 N.E.2d 1107 (1991); accord, *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716, 575 N.E.2d 734 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment." *Pederson v. Time, Inc.,* 404 Mass. at 17, 532 N.E.2d 1211. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. *LaLonde v. Eissner,* 405 Mass. 207, 209, 539 N.E.2d 538 (1989).

I. Breach of Contract

Defendants argue that plaintiffs' claims for breach of contract are premised on expressed and/or implied promises: (1) for employment for an indefinite period assuming that plaintiffs' work performance was good and; (2) to promote them into management positions. Defendants contend that since plaintiffs were employees at will, any oral promises regarding job security or promotion are unenforceable as a matter of law. Defendants also claim that paragraph eleven of the confidentiality agreement signed by the plaintiffs precludes the existence of any alleged oral modifications of their at-will employment contract.

*5 Plaintiffs counter that they formed a unilateral contract with defendants which required their performance in exchange for the employment promises made by agents of the defendants. Thus, plaintiffs contend that defendants breached the employment contracts by failing to promote them. Plaintiffs also contend that the confidentiality agreement is not fully integrated and thus should have no effect on the any oral agreements between the parties.

A. Contract Terms

Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court. *Allstate Insurance Co. v. Bearce,* 412 Mass. 442, 446- 47, 589 N.E.2d 1235 (1992); *Freelander v. G. & K. Realty Corp.,* 357 Mass. 512, 516, 258 N.E.2d 786 (1970). If a contract is ambiguous its interpretation creates a question of fact for the jury. *Commercial Union Ins. Co. v. Boston Edison Co.,* 412 Mass. 545, 557, 591 N.E.2d 165 (1992); *Trafton v. Custeau,* 338 Mass. 305, 307-08, 155 N.E.2d 159 (1959). A contract's language is ambiguous where its "terms are inconsistent on their face or where the phraseology can support reasonable difference[s] of opinion as to the meaning of the words employed and obligations undertaken." *Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115, 1122 (1st Cir.1995). An unambiguous contract must be enforced according to its terms and the subjective contemplations of the parties are immaterial. *Schwanbeck v. Federal-Mogul Corp.,* 412 Mass. 703, 706, 592 N.E.2d 1289 (1992), citing *Freelander, supra* at 516, 258 N.E.2d 786; *Blakeley v. Pilgrim Packing Co.,* 4 Mass.App.Ct. 19, 24, 340 N.E.2d 511 (1976). Parties are bound by the plain terms of their contract. *Forte v. Caruso,* 336 Mass. 476, 480-81, 146 N.E.2d 501 (1957); *Hiller v. Submarine Signal Co.,* 325 Mass. 546, 550, 91 N.E.2d 667 (1950).

"The parol evidence rule precludes evidence of earlier or contemporaneous discussions that would modify the provisions of a later integrated agreement which the proponent of the agreement seeks to enforce." *New England Financial Resources, Inc. v. Coulouras,* 30 Mass.App.Ct. 140, 145, 566 N.E.2d 1136 (1991). "A fully integrated agreement is a statement which the parties have adopted as a complete and exclusive expression of their agreement." *Starr v. Fordham,* 420 Mass. 178, 188 n. 8, 648 N.E.2d 1261 (1995), citing Restatement (Second) of Contracts § 210(1) (1981); *Coll, supra* at 1123. In addition, an integrated agreement is a

writing which based on its completeness and specificity reasonably appears to be a complete agreement unless other evidence creates an issue that the writing was not a final expression. *Coll, supra* at 1123. Furthermore, where the parties to a contract understand and agree to be bound only by the written agreement negotiated, either party cannot reasonably rely on any contrary or different statements made to them during negotiations. *McCartin v. Westlake,* 36 Mass.App.Ct. 221, 232-34, 630 N.E.2d 283 (1994) (the franchise agreement contained the language that "[n]o agent or either party has the authority to make representations or other agreements, verbal or written, which modify or vary the terms or conditions of this Agreement").

**\*6** In general, when several writings evidence a single contract between the parties, they should be read together in order to arrive at an interpretation of the contract which supports the intention of the parties. *Phoenix Spring Beverage Co. v. Harvard Brewing Co.,* 312 Mass. 501, 505, 45 N.E.2d 473 (1942); *Chase Commercial Corp. v. Owen,* 32 Mass.App.Ct. 248, 250, 588 N.E.2d 705 (1992) (although jury trial waiver provision only present in two out of three documents executed by the parties, trial judge correctly ruled that three documents were part of one transaction and should be read together. Documents were signed at the same time and were interrelated in purpose). In addition, "[t]he language in a provision of one writing may be controlled by a provision in another writing when a single transaction is involved." *Katz v. Belko,* 16 Mass.App.Ct. 178, 181, 450 N.E.2d 630 (1983).

Whether the separate documents should be read together as one integrated agreement is a question of fact which turns upon the intention of the parties. See *Holmes Realty Trust v. Granite City Storage Co., Inc.,* 25 Mass.App.Ct. 272, 275, 517 N.E.2d 502 (1988).

At the top of the Confidentiality Agreement entered into between the parties in this case the following language is noted:
> PLEASE READ CAREFULLY: THE FOLLOWING TERMS AND CONDITIONS ARE AN IMPORTANT AND ESSENTIAL PART OF YOUR EMPLOYMENT WITH JENNY CRAIG, INC.

The next sentence of the agreement states that:
> Employee acknowledges by signing this Agreement that he/she has fully read and understands the following terms and conditions and the Employee thereby agrees:

As noted above, paragraph eleven of the agreement reads as follows:
> 11. You as employee are hired for an unspecified duration, and your employment is not guaranteed for any specific length of time. Therefore, either you as employee, or the Company may terminate the employment relationship at will, at any time with or without cause or notice. No other provision of this document, nor any oral or written statement made to you at any time, nor will any other fact or circumstance affect the at will status of your employment with the Company.

Although the language contained in the Confidentiality Agreement does not contain all of the provisions of the complete employment agreement between the parties, it is an essential part of the plaintiffs' employment contract and should be read together along with any other written contracts between the parties which create the employment agreement.

Plaintiffs point out that at the time they were hired, or shortly thereafter, they had to execute several documents in addition to the Confidentiality Agreement. These documents included, among others, an Employment Application, various tax forms, Center Guarantees, and an Acknowledgement of Receipt of Personnel Policies. Plaintiffs contend that in order to be a fully integrated document the Confidentiality Agreement would have to include other provisions of the employment agreement between the parties such as compensation and benefits.

**\*7** Despite this contention, however, plaintiffs have failed to show that the provision in paragraph eleven of the Confidentiality Agreement is in conflict with any other written agreements between the parties. In addition, the plaintiffs have not alleged or put forth specific facts which would support a claim that the Confidentiality Agreement and its terms along with the other documents do not form an integrated agreement. After reviewing the evidence presented and drawing all reasonable inferences in favor of the plaintiffs, a reasonable jury could not read these documents as separate agreements. See *Holmes, supra* at 276-77, 517 N.E.2d 502. Therefore, in light of the nature of the documents in this case, this Court rules that the provisions contained in the separate documents should be treated as parts of a single, integrated agreement.

If the Confidentiality Agreement is part of an integrated employment agreement, the parol evidence

rule would apply to any oral discussions that would modify the provisions of the integrated agreement. As such, the integrated documents must be enforced according to their terms unless the terms are ambiguous on their face. The plain terms of paragraph eleven of the Confidentiality Agreement state that any oral statement made to the undersigned employee will not affect the at-will status of the employee's employment with Jenny Craig. Therefore, any alleged oral promises regarding job security or promotions made by Jenny Craig employees to plaintiffs would be unenforceable. See *New England Power Co. v. Riley Stoker Corp.,* 20 Mass.App.Ct. 25, 35, 477 N.E.2d 1054 (1985) (claims based on alleged oral statements of warranties made prior to written agreement, "even if proved, [were] unenforceable as matter of law as they were 'superseded by the unambiguous provisions of the integrated written agreement' "). Furthermore, the at-will nature of the plaintiffs' employment status precludes any alleged breach of contract claim.

B. At-Will Status

Under Massachusetts law, "[t]he general rule is that an employment at-will contract can be terminated at any time for any reason or for no reason at all." *Folmsbee v. Tech Tool Grinding & Supply, Inc.,* 417 Mass. 388, 394, 630 N.E.2d 586 (1994). According to the general rule, then, both the plaintiffs and Jenny Craig were free to terminate their respective employment contracts with or without cause.

Massachusetts courts have recognized narrow exceptions to the at-will doctrine. Employers may be liable for terminating an at-will employee in violation of an established public policy. See *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School,* 404 Mass. 145, 149-50, 533 N.E.2d 1368 (1989); *Hobson v. McLean Hospital Corp.,* 402 Mass. 413, 416, 522 N.E.2d 975 (1988); *DeRose v. Putnam Management Co., Inc.,* 398 Mass. 205, 210, 496 N.E.2d 428 (1986). An implied covenant of good faith and fair dealing in an at-will employment contract may also impose liability on the employer. *Fortune v. National Cash Register Co.,* 373 Mass. 96, 102-05, 364 N.E.2d 1251 (1977). See *Gram v. Liberty Mutual Insurance Co.,* 384 Mass. 659, 671, 429 N.E.2d 21 (1981) (this exception has been narrowly construed and the discharge of an at-will employee without cause is not, by itself, a violation of employer's obligation of good faith and fair dealing). The following exceptions to the at-will doctrine have also gained some recognition: (1) interference with contractual relations; (2) fraud; (3) invasion of privacy; and (4) breach of implied in fact contracts. 8 Empl. Discrimination Coordinator (Callagan), at 113,001-10 (Aug. 31, 1993); Jeffrey L. Hirsch, Labor and Employment in Massachusetts § 14-6(a) (1995).

**\*8** Employers may avoid the inference of contractual limitations on discharge discretion by including express disclaimers in employment applications, handbooks, and other documents. In *Gregory v. Raytheon Service Co.,* 27 Mass.App.Ct. 1170, 1170-71, 540 N.E.2d 694 (1989), the court held that plaintiff did not have a claim for lifetime employment where the integrated employment agreement contained a clear statement of the at-will nature of the employee's status. Thus, plaintiff was unable to support a claim of an exception to the at-will employment doctrine based on a breach of implied contract because of oral statements made to him by agents of the employer. The court further stated that

> [t]o accept that a lifetime agreement survived the documents would not be to supplement the documents representing the integration, but to contradict them, since these unmistakably described an agreement terminable at will. If any issue of fact were otherwise raised upon which trial was required, this factor of contradiction would put the quietus to it.

*Gregory, supra* at 1171, 540 N.E.2d 694. See *O'Brien, supra* at 906-07, 606 N.E.2d 937 (1993) (at-will employee could not support lifetime employment contract claim based on language in employee handbook and on employee's allegations that she was told by employer's agents that as long as she performed her duties she would have employment).

Based on the court's analysis in *Gregory,* this Court rules that plaintiffs do not have a claim for breach of contract in this case. The plaintiffs' at-will status precludes any claims they may have regarding an implied contract for long-term or lifetime employment. Since the employment agreement between the parties was terminable at will, Jenny Craig would remain free to terminate plaintiffs' employment at any time. In addition, the plaintiffs could terminate the employment relationship at any time. Therefore, a claim for a long-term or lifetime employment contract could not succeed under the facts of this case.

For the same reasons, plaintiffs' claims for breach of contract based on a failure to promote in accordance with alleged oral promises, will not lie. Since plaintiffs' employment was terminable at will, they could have been terminated simultaneous with or

shortly after any promotion awarded. Thus, any oral promise to promote any of the at-will plaintiff employees would be unenforceable as illusory and lacking in the mutuality needed to hold the parties to a binding contract. See *Pearson v. John Hancock Mutual Life Insurance Co.,* 979 F.2d 254, 258-59 (1st Cir.1992). See also *Edwards v. United States Fidelity and Guaranty Co.,* 848 F.Supp. 1460, 1465 (N.D.Cal.1994) (illogical to allow plaintiff to recover on breach of contract claim for repudiation of offer of promotion and transfer since she could have been discharged after working in new position); *Murphine v. Hospital Authority of Floyd County,* 151 Ga.App. 722, 723, 261 S.E.2d 457, 458 (1979) (at-will employee could not maintain breach of contract claim for failure to promote; oral promises to promote could not be enforced because employment contract was terminable at will).

*9 Based on the above analysis, defendants' motion for summary judgment on the breach of contract count of plaintiffs' complaint will be granted.

II. Promissory Estoppel

Plaintiffs also allege a claim based on promissory estoppel. Plaintiffs allege that Jenny Craig agents, through several oral promises and other representations, induced plaintiffs to believe that they would be promoted to management positions. Plaintiffs claim that they relied on these promises to their detriment by foregoing other employment opportunities in order to accept the Jenny Craig offer.

Defendants contend that the reliance by plaintiffs on any alleged oral promises was unreasonable since they were at-will employees who could be terminated at any time.

Promissory estoppel "permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Loranger Construction Corp. v. E.F. Hauserman Co.,* 6 Mass.App.Ct. 152, 154, 374 N.E.2d 306 (1978), citing Restatement [ (First) ] of Contracts § 90 (1932). [FN5] An essential element of a promissory estoppel claim is that the party invoking it must have reasonably relied on the alleged promise to his detriment. *Hall v. Horizon House Microwave, Inc.,* 24 Mass.App.Ct. 84, 93, 506 N.E.2d 178 (1987). See *Rooney v. Paul D. Osborne Desk Co.,* 38 Mass.App.Ct. 82, 83, 645 N.E.2d 50 (1995) (promissory estoppel "consists simply of a promise that becomes enforceable because of the promisee's reasonable and detrimental reliance").

> FN5. The most recent version of this section, found in Restatement (Second) of Contracts § 90(1) (1981), is essentially the same.

An action based on the reliance required for a promissory estoppel claim "is equivalent to a contract action, and the party bringing such action must prove all the necessary elements of a contract other than consideration." *Rhode Island Hospital Trust National Bank v. Varadian,* 419 Mass. 841, 850, 647 N.E.2d 1174 (1995). Furthermore, "[w]here a written statement conflicts with a prior oral representation, reliance on the oral representation is generally held to be unreasonable." *Coll, supra* at 1124.

This Court has ruled that the at-will provision in paragraph eleven of the Confidentiality Agreement is part of an integrated contract. Therefore, any oral promises of promotion made by Jenny Craig employees would be in conflict with this subsequent written provision since Jenny Craig or the plaintiff employees could have terminated the employment relationship prior to the award of any promotion. Thus, plaintiffs' reliance on these oral representations to form an agreement, in a contractual sense, would be unreasonable as a matter of law.

Even if the alleged promises stated a general time frame for promotion, plaintiffs understood that there were contingencies attached to future promotion. The knowledge of these contingencies, along with the plaintiffs' at-will status, would make any promise to promote illusory. The promises of promotion alleged in this case could not transform the nature of plaintiffs employment from at-will to employment for a definite period. See *Treadwell v. John Hancock Mutual Life Insurance Co.,* 666 F.Supp. 278, 287 (D.Mass., 1987). Likewise, even if the promises made could transform plaintiffs' employment to employment for a period until promotion, as noted above, such a result would be illogical since plaintiffs could be terminated at the same time that they were promoted. Thus, plaintiffs' claim for promissory estoppel fails as a matter of law.

III. Misrepresentation

*10 In order to sustain a claim for misrepresentation, plaintiffs must show that the defendants made a false representation of a material fact for the purpose of

1996 WL 1186939                                                                                                              Page 8
**(Cite as: 1996 WL 1186939 (Mass.Super.))**

inducing the plaintiffs to rely upon it, and that plaintiffs did detrimentally rely upon the representation as true. *Zimmerman v. Kent,* 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991). The party making the representation need not know that the statement is false if the fact represented is susceptible of actual knowledge. *Id*. The plaintiff's reliance on the alleged misrepresentation must be reasonable. *Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515, 523, 536 N.E.2d 344 (1989). See *Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority,* 357 Mass. 40, 44, 255 N.E.2d 793 (1970); *Coll, supra* at 1125 n. 6 (action for deceit failed since plaintiff failed to demonstrate reasonable reliance).

In general, a promise in futuro is not a representation of an existing fact and will not support an action for deceit or fraud. See *Fogarty v. Van Loan,* 344 Mass. 530, 532, 183 N.E.2d 111 (1962). However, a promissory statement may be the basis for a claim of deceit or misrepresentation if at the time the promise was made the promisor had no intention of carrying it out. *Botti v. Iovino,* 337 Mass. 775, 151 N.E.2d 257 (1958). The intent not to perform a promise cannot be shown merely by nonperformance of the promise. *Galotti v. United States Trust Co.,* 335 Mass. 496, 501, 140 N.E.2d 449 (1957); *Fanger v. Leeder,* 327 Mass. 501, 506, 99 N.E.2d 533 (1951).

Defendants argue that plaintiffs' reliance on any alleged promises of promotion was unreasonable as a matter of law, since they were at-will employees and the alleged promises were vague, noncommittal and illusory. Although plaintiffs allege that agents of defendants knew that the promises of promotion were false, they have not put forth specific facts supporting this claim. Furthermore, plaintiffs have not created a genuine issue that any alleged promises were not merely opinions, estimates or judgments of the plaintiffs' potential for promotion as opposed to being susceptible to actual knowledge. See *Treadwell, supra* at 285.

This Court ruled that the plaintiffs' reliance on any alleged promises of promotion was unreasonable as a matter of law under their promissory estoppel claim. For the same reasons, even if we assume that defendants made certain implied misrepresentations of material facts, plaintiffs' reliance on the statements was unreasonable. As at-will employees, plaintiffs could have been discharged at any time; and thus their reliance on a representation guaranteeing future promotion would be unreasonable.

*11 Furthermore, plaintiffs have failed to allege damages cognizable in a claim for misrepresentation based on promises to promote. Any promises to promote plaintiffs did not amount to representations of employment for a specific period. Since, as at-will employees, plaintiffs' length of employment was subject to speculation, they could not sustain a claim for lost wages due to any alleged misrepresentations. See *Treadwell, supra* at 286, citing *Kravetz v. Merchants Distributors, Inc.,* 387 Mass. 457, 463, 440 N.E.2d 1278 (1982).

In addition, since any alleged promises were to be performed in the future, they would probably not support a claim for misrepresentation. Plaintiffs have not adequately put forth facts that create a genuine issue that defendants had no intention of promoting them. Lastly, plaintiffs cannot support a claim for misrepresentation based merely on defendants' failure to perform any of the alleged promises to promote.

Therefore, as plaintiffs have failed to make a sufficient showing on the essential elements of detrimental and reasonable reliance required for the tort of misrepresentation, summary judgment will enter for defendants on this count of plaintiffs' complaint.

IV. Constructive Discharge

Plaintiffs Garland and Short claim that they were constructively discharged when they were forced to resign because Jenny Craig failed to promote them. Defendants contend that as at-will employees, plaintiffs cannot sustain a claim for constructive discharge since Jenny Craig had no binding agreement to retain plaintiffs. Defendants also argue that Garland and Short have not made a sufficient showing, as a matter of law, on the elements required for a constructive discharge claim.

A claim for constructive discharge must establish that "the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *GTE Products Corp. v. Stewart,* 421 Mass. 22, 34, 653 N.E.2d 161 (1995), [FN6] quoting *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977). See *Vega v. Kodak Caribbean. Ltd.,* 3 F.3d 476, 480 (1st Cir.1993) (to support claim of constructive discharge plaintiff must show "work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities"). "The test is met if, based on an *objective* assessment of the conditions under which the employee has asserted he was expected to work,

it could be found they were so difficult as to be intolerable." *GTE Products Corp., supra* at 34, 653 N.E.2d 161 (citations omitted) (emphasis in original). The adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable. *Id*. at 34-35, 653 N.E.2d 161.

> FN6. The Supreme Judicial Court had not addressed the requirements for a constructive discharge claim prior to its decision in *GTE Products Corp*. In doing so, it looked to the decisions of federal and state appellate courts for guidance. *GTE Products Corp., supra* at 34, 653 N.E.2d 161. Therefore, this Court will treat federal authorities as persuasive in the analysis of plaintiffs' constructive discharge claim.

 *12 The mere allegation of a failure to promote in and of itself is insufficient to support a constructive discharge claim. *Thomas v. Compugraphic Corp.,* No. 88-2315-WF (D.Mass., May 26, 1992); *Valente v. General Foods Manufacturing Corp.,* No. 87-2477-MA (D.Mass., Sept.20, 1988) (failure to promote and remaining in same job position does not equal onerous or unpleasant working conditions for purposes of constructive discharge). Other federal courts have concurred with this view ruling that a failure to promote by itself will not make the employee's working conditions "intolerable." See *Dashnaw v. Pena,* 12 F.3d 1112, 1115 (D.C.Cir.1994) (in addition to intentional discrimination, other "aggravating factors" must be present to support constructive discharge claim); *Boze v. Branstetter,* 912 F.2d 801, 805-06 (5th Cir.1990); *Jurgens v. Equal Employment Opportunity Commission,* 903 F.2d 386, 391-93 (5th Cir.1990); *Wardwell v. School Board of Palm Beach County, Florida,* 786 F.2d 1554, 1557-58 (11th Cir.1986); *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1256 n. 4 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Irving v. Dubuque,* 689 F.2d 170, 172 (10th Cir.1982). See generally Lex K. Larson, Employment Discrimination § 15.07 at 15-40 through 15-46 (2d ed. 1995) (constructive discharge claims have generally not succeeded when based solely on discrimination in denial of promotion; plaintiff must also show "aggravating factors").

 Although being passed over several times for promotion may be disappointing, it does not become an intolerable working condition *per se*. *Id*. More precisely, a reasonable fact finder would not find it intolerable. In this case, the plaintiffs have not shown that the defendants' failure to promote them was materially injurious to them and created a work environment so onerous and unpleasant that they were forced to resign. Thus, the plaintiffs' evidence is insufficient to create a genuine dispute as to whether defendants' failure to promote them created intolerable work conditions which would support a constructive discharge claim. [FN7]

> FN7. Plaintiffs cite the Appeals Court's decision in *School Committee of Stoughton v. Labor Relations Commission,* 4 Mass.App.Ct. 262, 270, 346 N.E.2d 129 (1976), for the proposition that an employer's conduct which discourages continued employment and makes work economically unattractive is equivalent to a constructive discharge. Plaintiffs reliance on that case will not disturb this Court's ruling on their constructive discharge claim. First, in *School Committee of Stoughton,* the harm suffered by the employees was a drastic reduction in their work hours which created an immediate and substantial financial hardship. In the instant case, the plaintiffs have not suffered present damages and can only claim damages based on the salaries they could have earned, if promoted. Second, the Supreme Judicial Court has since enumerated the elements needed to show a constructive discharge claim in *GTE Products Corp., supra,* and based on that standard, this Court has ruled that the failure to promote plaintiffs did not make their work conditions intolerable.

 The federal district court has recognized, however, that "[d]enial of opportunities for promotion and advancement by reason of sex discrimination may constitute intolerable conditions of employment justifying an employee's resignation, and warranting a finding of constructive discharge." *Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 753 F.Supp. 406, 407 (D.Mass., 1990). See *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 28 (1st Cir.1995) ( "[d]irect or circumstantial evidence of discriminatory animus could help substantiate a claim that one's working conditions had become intolerable to an unreasonable degree"). Nevertheless, proof of discrimination alone will not support a claim of constructive discharge. *Contardo, supra* at 411. See Lex K. Larson, Employment Discrimination § 15.07,

*supra*. An employment decision that would be career-ending, demotions, humiliating and unjustified criticism or additional work loads may be evidence of constructive discharge. *Id*.

***13** Plaintiffs imply in their constructive discharge claim that they were not promoted because they were men. As noted above, an allegation of discrimination alone will not equal constructive discharge. Furthermore, plaintiffs have not provided sufficient evidence of any of the additional factors which have assisted in substantiating constructive discharge claims. However, even if plaintiffs were to provide sufficient additional factors of constructive discharge, since their claim is primarily premised on a sex discrimination theory, it should be addressed in a suit pursuant to G.L. c. 151B. [FN8]

> FN8. See e.g. *Ruffino v. State Street Bank and Trust Co.,* 908 F.Supp. 1019, 1052 (D.Mass., 1995) (even if plaintiff could show constructive discharge, her common law claim failed because it was essentially grounded in public policy against sexual harassment articulated in G.L. c. 151B). See *Mouradian v. General Electric Co.,* 23 Mass.App.Ct. 538, 542-43, 503 N.E.2d 1318 (1987) (although plaintiff brought several claims under various tort and contract theories, common denominator was common law claim for wrongful termination based on age. Court held that separate common law claims were merely G.L. c. 151B claims dressed in different outfits); *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 586, 631 N.E.2d 555 (1994) (G.L. c. 151B provides exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections). See also *Blue Hills Regional District School Committee v. Flight,* 383 Mass. 642, 644, 421 N.E.2d 755 (1981) (denial of promotion to public employee because of her sex is constitutionally impermissible and violative of G.L. c. 151B).

For the above reasons, defendants' motion for summary judgment on plaintiffs Garland's and Short's constructive discharge claims will be allowed.

### ORDER

For the foregoing reasons, Jenny Craig's Motion for Summary Judgment on Counts I (Constructive Discharge), Counts III-VII (Breach of Contract), Count VIII (Misrepresentation), and Count XI (Promissory Estoppel) of plaintiffs' complaint is *ALLOWED*.

1996 WL 1186939 (Mass.Super.)

END OF DOCUMENT